**FILED**
CLERK, U.S. DISTRICT COURT

10/22/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ E.C. _____ DEPUTY

E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
CHARLES E. PELL (Cal. Bar No. 210309)
BRADLEY E. MARRETT (Cal. Bar No. 288079)
Assistant United States Attorneys
Santa Ana Branch Office
    8000 United States Courthouse
    411 West Fourth Street
    Santa Ana, California 92701
    Telephone: (714) 338-3542/3505/2829
    Facsimile: (714) 338-3561
    E-mail:    charles.e.pell2@usdoj.gov
               bradley.marrett@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>ANDREW HOANG DO,<br><br>          Defendant. | No.  8:24-cr-00126 JVS<br><br>PLEA AGREEMENT FOR DEFENDANT ANDREW HOANG DO |

1.    This constitutes the plea agreement between ANDREW HOANG DO ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the investigation of public corruption.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

2.    Defendant understands and agrees that this Agreement is part of a "package deal" in which the disposition of the case against defendant is tied to and conditioned on the disposition of a case

1    against another individual, whose agreement is attached as Exhibit 1

2    to this Plea Agreement.  Accordingly, defendant and the USAO agree

3    that this Agreement and the obligations it creates will not become

4    binding on the USAO and defendant unless and until: (a) defendant

5    executes this Agreement and enters a guilty plea in accordance with

6    this Agreement; and (b) defendant's daughter R.D. executes her

7    diversion agreement with the USAO, which is attached as Exhibit 1 to

8    this Plea Agreement.  Defendant acknowledges that defendant has

9    discussed with defendant's attorney, and carefully considered, the

10   possible advantages and disadvantages to defendant of entering into

11   this Agreement as part of the package deal; defendant is entering

12   into this Agreement as part of the package deal freely and

13   voluntarily because defendant believes this Agreement and the package

14   deal to be in defendant's best interests; and defendant is not

15   entering into this Agreement as part of the package deal because of

16   threats, coercion, or other undue influence by the USAO or by the

17   other individual who is part of the package deal, their counsel, or

18   anyone acting on their behalf.

19                          DEFENDANT'S OBLIGATIONS

20       3.   Defendant agrees to:

21            a.   Give up the right to indictment by a grand jury and,

22   at the earliest opportunity requested by the USAO and provided by the

23   Court, appear and plead guilty to a single-count information in the

24   form attached to this agreement as Exhibit 2 or a substantially

25   similar form, which charges defendant with Conspiracy to Commit

26   Bribery Concerning Programs Receiving Federal Funds, in violation of

27   18 U.S.C. § 371.

28            b.   Not contest facts agreed to in this agreement.

2

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.    Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessment.

h.    At or before the time of sentencing, make a prejudgment payment by delivering a certified check or money order to the Fiscal Clerk of the Court in the full amount of restitution to be applied to satisfy defendant's anticipated criminal debt.  Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles, California 90012.

i.    Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

j.    Complete the Financial Disclosure Statement on a form

1   provided by the USAO and, within 30 days of defendant's entry of a

2   guilty plea, deliver the signed and dated statement, along with all

3   of the documents requested therein, to the USAO by either email at

4   usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

5   Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

6   Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

7   criminal debt shall be assessed based on the completed Financial

8   Disclosure Statement and all required supporting documents, as well

9   as other relevant information relating to ability to pay.

10         k.   Authorize the USAO to obtain a credit report upon

11   returning a signed copy of this plea agreement.

12         l.   Consent to the USAO inspecting and copying all of

13   defendant's financial documents and financial information held by the

14   United States Probation and Pretrial Services Office.

15       4.   Defendant further agrees:

16         a.   Although defendant denies he has any right, title, or

17   interest in the following, to forfeit all right, title, and interest

18   in and to any and all monies, properties, and/or assets of any kind,

19   derived from or acquired as a result of, or used to facilitate the

20   commission of, or involved in the illegal activity to which defendant

21   is pleading guilty, specifically including, but not limited to, the

22   following:

23             i.   14732 Candeda Place, Tustin, California 92780;

24             ii.  2410 W. 17th Street, Santa Ana, 92706;

25           iii. $1,702,630.86 in Funds from JP Morgan Chase Bank

26   Account Number '5796 held in the name of Viet America Society; and

27            iv.  $724,749.10 in Funds from JP Morgan Chase Bank

28   Account Number '5136 held in the name of Aloha Financial Investment,

1  Inc. (collectively, the "Forfeitable Property").

2          b.    To the Court's entry of an order of forfeiture at or

3  before sentencing with respect to the Forfeitable Property and to the

4  forfeiture of the assets.

5          c.    That the Preliminary Order of Forfeiture shall become

6  final as to the defendant upon entry.

7          d.    To take whatever steps are necessary to pass to the

8  United States clear title to the Forfeitable Property, including,

9  without limitation, the execution of a consent decree of forfeiture

10  and the completing of any other legal documents required for the

11  transfer of title to the United States.

12          e.    Not to contest any administrative forfeiture

13  proceedings or civil judicial proceedings commenced against the

14  Forfeitable Property.  If defendant submitted a claim and/or petition

15  for remission for all or part of the Forfeitable Property on behalf

16  of himself or any other individual or entity, defendant shall and

17  hereby does withdraw any such claims or petitions, and further agrees

18  to waive any right he may have to seek remission or mitigation of the

19  forfeiture of the Forfeitable Property.  Defendant further waives any

20  and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

21          f.    Not to assist any other individual in any effort

22  falsely to contest the forfeiture of the Forfeitable Property.

23          g.    Not to claim that reasonable cause to seize the

24  Forfeitable Property was lacking.

25          h.    To prevent the transfer, sale, destruction, or loss of

26  the Forfeitable Property to the extent defendant has the ability to

27  do so.

28          i.    To fill out and deliver to the USAO a completed

5

1  financial statement listing defendant's assets on a form provided by

2  the USAO.

3        j.   That forfeiture of Forfeitable Property shall not be

4  counted toward satisfaction of any special assessment, fine, costs,

5  or other penalty the Court may impose.

6        k.   With respect to any criminal forfeiture ordered as a

7  result of this plea agreement, defendant waives: (1) the requirements

8  of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding

9  notice of the forfeiture in the charging instrument, announcements of

10 the forfeiture at sentencing, and incorporation of the forfeiture in

11 the judgment; (2) all constitutional and statutory challenges to the

12 forfeiture (including by direct appeal, habeas corpus or any other

13 means); and (3) all constitutional, legal, and equitable defenses to

14 the forfeiture of the Forfeitable Property in any proceeding on any

15 grounds including, without limitation, that the forfeiture

16 constitutes an excessive fine or punishment.  Defendant acknowledges

17 that the forfeiture of the Forfeitable Property is part of the

18 sentence that may be imposed in this case and waives any failure by

19 the Court to advise defendant of this, pursuant to Federal Rule of

20 Criminal Procedure 11(b)(1)(J), at the time the Court accepts

21 defendant's guilty plea.

22                    THE USAO'S OBLIGATIONS

23  5.   The USAO agrees to:

24        a.   Not contest facts agreed to in this agreement.

25        b.   Abide by all agreements regarding sentencing contained

26 in this agreement.

27        c.   At the time of sentencing, provided that defendant

28 demonstrates an acceptance of responsibility for the offenses up to

1  and including the time of sentencing, recommend a two-level reduction

2  in the applicable Sentencing Guidelines offense level, pursuant to

3  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

4  additional one-level reduction if available under that section.

5        d.    Except for criminal tax violations (including

6  conspiracy to commit such violations chargeable under 18 U.S.C.

7  § 371), not further criminally prosecute defendant for violations of

8  18 U.S.C. §§ 201, 371, 666, 1014, 1028A(a)(1), 1341, 1343, 1349,

9  1956, and 1957 arising out of defendant's conduct described in the

10  agreed-to factual basis set forth in paragraph 13 below.  Defendant

11  understands that the USAO is free to criminally prosecute defendant

12  for any other unlawful past conduct or any unlawful conduct that

13  occurs after the date of this agreement.  Defendant agrees that at

14  the time of sentencing the Court may consider the uncharged conduct

15  in determining the applicable Sentencing Guidelines range, the

16  propriety and extent of any departure from that range, and the

17  sentence to be imposed after consideration of the Sentencing

18  Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

19  Attached as Exhibit 3 is defendant's separate agreement with the

20  Orange County District Attorney's Office ("OCDA") regarding potential

21  future prosecution of defendant by the OCDA.

22        e.    To recommend to the Money Laundering and Asset

23  Recovery Section, Criminal Division, Department of Justice, that the

24  restoration process be used to apply the forfeited monies from the

25  Tustin property (limited to the purchase funds) to the restitution

26  order to be entered against defendant in this case.

27        f.    Upon entry of a plea of guilty pursuant to the terms

28  of this agreement, the government will enter into a diversion letter

agreement with R.D., which requires R.D. to agree to, among other things, forfeiture of real property, make restitution, and cooperate fully with the USAO and OCDA.  The diversion letter agreement with R.D., which is attached as Exhibit 1 to this Plea Agreement, shall be conditional until sentencing and entry of final judgment against defendant and R.D.'s compliance with all of its terms.

NATURE OF THE OFFENSE

6.    Defendant understands that for defendant to be guilty of the crime charged in the single-count information, that is, Conspiracy to Commit Bribery Concerning Programs Receiving Federal Funds, in violation of Title 18, United States Code, Section 371, the following must be true: (1) beginning in May 2020 and ending in or about August 2024, there was an agreement between two or more persons to commit Federal Program Bribery, in violation of Title 18, United States Code, Section 666(a)(1)(B); (2) defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

7.    For a violation of Title 18, United States Code, Section 666(a)(1)(B), Bribery Concerning Programs Receiving Federal Funds, the following must be true: (1) an individual was an agent of an agency of the state, such as the County of Orange; (2) the individual solicited, demanded, accepted or agreed to accept anything of value from another person; (3) the individual acted corruptly with the intent to be influenced or rewarded in connection with some business, transaction or series of transactions; (4) this business, transaction, or series of transactions involved anything of a value

1  of $5,000 or more; and (5) the agency of the state, such as the

2  County of Orange, in a one-year period, received benefits of more

3  than $10,000 under any Federal program involving a grant, contract

4  subsidy, loan, guarantee, insurance, or other assistance.

5                    PENALTIES AND RESTITUTION

6      8.    Defendant understands that the statutory maximum sentence

7  that the Court can impose for a violation of Title 18, United States

8  Code, Section 371, is: 5 years' imprisonment; a 3-year period of

9  supervised release; a fine of $250,000 or twice the gross gain or

10 gross loss resulting from the offense, whichever is greatest; and a

11 mandatory special assessment of $100.

12     9.    Defendant understands and agrees that defendant will be

13 required to pay full restitution to the victim(s) of the offenses to

14 which defendant is pleading guilty.  Defendant agrees that, in return

15 for the USAO's compliance with its obligations under this agreement,

16 the Court may order restitution to persons other than the victim(s)

17 of the offenses to which defendant is pleading guilty and in amounts

18 greater than those alleged in the counts to which defendant is

19 pleading guilty.  In particular, defendant agrees that the Court may

20 order restitution to any victim of any of the following for any

21 losses suffered by that victim as a result: (a) any relevant conduct,

22 as defined in U.S.S.G. § 1B1.3, in connection with the offenses to

23 which defendant is pleading guilty; and (b) any charges not

24 prosecuted pursuant to this agreement as well as all relevant

25 conduct, as defined in U.S.S.G. § 1B1.3, in connection with those

26 charges.  The parties currently believe that the applicable amount of

27 restitution is more than $550,000 and less than approximately

28 $730,500, but recognize and agree that this amount could change based

on facts that come to the attention of the parties prior to sentencing.

10. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

12. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported

from the United States.  Defendant may also be denied United States

citizenship and admission to the United States in the future.

Defendant understands that while there may be arguments that

defendant can raise in immigration proceedings to avoid or delay

removal, removal is presumptively mandatory and a virtual certainty

in this case.  Defendant further understands that removal and

immigration consequences are the subject of a separate proceeding and

that no one, including his attorney or the Court, can predict to an

absolute certainty the effect of his convictions on his immigration

status.  Defendant nevertheless affirms that he wants to plead guilty

regardless of any immigration consequences that his pleas may entail,

even if the consequence is automatic removal from the United States.

FACTUAL BASIS

13.  Defendant admits that defendant is, in fact, guilty of the

offense to which defendant is agreeing to plead guilty.  Defendant

and the USAO agree to the statement of facts provided below and agree

that this statement of facts is sufficient to support a plea of

guilty to the charge described in this agreement and to establish the

Sentencing Guidelines factors set forth in paragraph 15 below but is

not meant to be a complete recitation of all facts relevant to the

underlying criminal conduct or all facts known to either party that

relate to that conduct.

At all times relevant to this plea agreement, defendant Andrew

Hoang Do was an elected official for the County of Orange, namely,

defendant was the District One Supervisor on the Orange County Board

of Supervisors (OCBOS), a position he has held from 2015 through

present.  In this position, defendant was an agent of local

government, here, the County of Orange.  Beginning in 2020 and

1  continuing for several years, defendant steered more than $10,000,000

2  in federal and County pandemic-related funds to Viet America Society

3  (VAS), a nonprofit entity which later became affiliated with his

4  twenty-three year old daughter.

5      More than half a million dollars from the public funds VAS had

6  received from the County of Orange were paid to defendant.  Payment

7  was by way of funneling those funds – which were comprised of both

8  federal and state funds – through VAS and two of VAS's vendors back

9  to defendant's daughters.  Those bribes totaled more than $550,000

10  but less than $730,500, including more than $385,000 to one of

11  defendant's daughters and $100,000 to another.  Defendant agrees that

12  he was influenced and rewarded in connection with county business

13  involving more than $5,000, and that in this involvement he acted

14  corruptly.

15      By his acceptance of bribes for the implicit agreement to steer

16  and vote in favor of the County contracts with VAS, and when steering

17  and voting in favor of the County contracts with VAS, defendant acted

18  corruptly, that is, intending to be influenced or rewarded in

19  connection with County business involving more than $5,000.  By this

20  conduct, defendant not only engaged in public corruption in violation

21  of federal law, but he also abused his position of trust as the OCBOS

22  Supervisor for District One.

23      Background

24      In 2020, the OCBOS was responsible for Orange County's $7.6

25  billion budget for fiscal year 2020-2021, which grew to $9.3 billion

26  for fiscal year 2023-2024.  In each of calendar years 2020 through

27  2024, the County of Orange received more than $10,000 in federal

28  funds.

On March 25, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), which was signed into law by former President Trump on March 27, 2020.  The CARES Act was a $2.2 trillion economic stimulus bill created to address fallout from the COVID-19 pandemic.  In 2020, Orange County received approximately $544 million to be expended in accordance with CARES Act requirements.  CARES Act money was received by the County directly from the U.S. Department of Treasury.

On March 11, 2021, President Biden signed the American Rescue Plan (ARPA) Act of 2021 (H.R. 1319) into law.  The $1.9 trillion package was intended to support communities in their recovery from the COVID-19 pandemic, address economic fallout and lay the foundation for a strong recovery.  The Coronavirus State and Local Fiscal Recovery Fund (SLFRF), under ARPA, allocated $350 billion in funding for eligible state, local, territorial, and Tribal governments to respond to the COVID-19 pandemic; replace lost revenue to strengthen support for vital public services and help retain jobs; support immediate economic stabilization for households and businesses; and address public health and other economic challenges. The SLFRF provided substantial flexibility for each government to meet local needs.  All funds were required to be obligated within the period between March 3, 2021 and December 31, 2024, and expended to cover such obligations by December 31, 2026.  The County was allocated $616.8 million in SLFRF – $308.4 million received in May 2021, and $308.4 million received in June 2022.

On June 2, 2020, the OCBOS authorized allocation of $5 million in CARES Act funding for a Nutrition Gap Program (NGP).  The NGP was intended to support persons 60 years and older or those with

13

disabilities of any age by providing meals delivered to their homes. Each OCBOS Supervisor was allocated $1 million to direct the OC Community Resources (OCCR) Director or designee to negotiate and enter emergency contracts pursuant to the previous resolution approved on April 21, 2020. These contracts renewed and increased annually.

Co-conspirator#1 incorporated VAS as a non-profit entity in June 2020. At the end of 2020, VAS began to enter contracts with the County of Orange to provide meals to the elderly and infirm under the Nutrition Gap Program (NGP), which ultimately totaled more than $9 million in such NGP contracts and $1 million for a contract to design, construct, and maintain the Vietnam War memorial at Orange County's Mile Square Park. The records reflect that Co-conspirator#1 signed on behalf of VAS for most of those contracts, and defendant's daughter signed on behalf of VAS for two of them. Some of these contracts specifically provided that the contracts were federally funded. The first check from the County of Orange to VAS issued in around January 2021 for $100,000, which VAS deposited on February 1, 2021. From January 2021 through October 2023, VAS received more than $10,000,000 from the County of Orange.

Defendant took the official acts of steering and voting in favor of more than $10,000,000 in County Contracts for VAS. Specifically, on multiple dates in 2021, 2022, and 2023, in his position as OCBOS District One Supervisor, defendant took official acts in favor of the following contracts with VAS, including on September 13, 2022, November 29, 2022, and May 23, 2023:

| VIET AMERICA SOCIETY (VAS) CONTRACTS | | | | | |
|---|---|---|---|---|---|
| CONTRACT No. | PROJECT FUND/ PROGRAM | CONTRACT PERIOD | CONTRACT AMOUNT (INCLUDING AMENDMENTS) | AMOUNT PAID TO VAS | PERSON SIGNING ON BEHALF OF VAS |
| MA-012-21010980 | Nutrition Gap Program services | 12/31/20 – 02/02/21 | $200,000 | $200,000 | Co-conspirator#1 |
| MA-012-21011525 | NGP services | 05/03/21 – 05/31/23 | $3,999,996 | $3,999,994 | Co-conspirator#1 |
| GAX 017-23003993 (Grant) | Meal gap programs | 12/20/22 – 06/30/23 | $2,200,000 | $2,200,000 | Co-conspirator#1 |
| GAX 017-CF24000006 (Grant) | Senior Congregant Meal Program | 08/15/23 | $3,000,000 | $3,000,000 | Co-conspirator#1 |
| GAX 017-CF24000019 (Grant) | Vietnam War Memorial | 10/05/23 – 06/30/24 | $1,000,000 | $1,000,000 | Co-conspirator#1 |
| | Mental health and wellbeing services | 01/01/23 – 06/30/23 | $125,000 | Unknown | Defendant's daughter |
| | Mental health and wellbeing services | 07/01/23 – 06/30/24 | $250,000 | unknown | Defendant's daughter |
| TOTAL | | | $10,774,996 | $10,399,994 | |

### Defendant Received More Than $500,000 But Less Than $730,500 In Bribes.

Shortly after receiving the public funds from the County of Orange, VAS began to pay Company#1 $100,000 or more per month from April 2021 through February 2024, which totaled to approximately $3,804,000. Several months after Company#1 began to receive funds from VAS, Company#1 turned around and began to pay defendant's daughter $8,000 per month, totaling around $224,000, which occurred from September 2021 to February 2024. The bank records show that Co-conspirator#1 and Co-conspirator#2 used funds that VAS had received from the County to make the $8,000 monthly payments to defendant's

1  daughter.  When VAS began paying Company#1 in April 2021, it paid

2  $100,000/month by checks dated in April, June, and July 2021.  Then,

3  VAS began to pay Company#1 $108,000 per month, with the first such

4  $108,000 check dated September 8, 2021.  Thereafter, VAS started to

5  regularly pay Company#1 the increased $108,000 amount per month.  The

6  first $8,000 check from Company#1 to defendant's daughter began that

7  same month – in September 2021.  Thus, VAS had increased its monthly

8  payments to Company#1 by the same amount of the monthly $8,000 checks

9  that Company#1 was paying to defendant's daughter as disguised bribes

10  to defendant.

11       Defendant knew that some of the payments to his daughter were

12  partly in appreciation of the contracts awarded by the County.

13  Defendant understood that implied in recommending that the County

14  award the contacts to VAS, VAS would be indebted to defendant and

15  would have to compensate defendant in some manner for the receipt of

16  those contracts.

17       As part of the implied agreement, VAS and Co-Conspirator#1 knew

18  they had to pay money for the contracts.  This money was done in the

19  form of payments to defendant's daughters.  In July 2023, Company#1

20  transferred a total of $381,500 from the funds it had received from

21  VAS to an escrow company.  In July 2023, defendant's daughter then

22  used those funds to purchase a home in Tustin, California, in her

23  sole name, for $1,035,000.  The records show that a mortgage for more

24  than $600,000 was obtained by a mortgage application containing false

25  information and with fabricated documents.  The $381,500 wire-

26  transferred by Company#1 constituted a bribe from Co-conspirator#1 to

27  defendant, in exchange for defendant agreeing to steer, steering,

28  agreeing to vote for, and voting in favor of the County contracts

1   with VAS.

2       In or about October 2022, Co-Conspirator#1 also used Company#2 —

3   an air conditioning company that VAS and Company#1 had paid a total

4   of more than $256,000 — to funnel $100,000 in additional bribes to

5   defendant.  This $100,000 bribe was paid to defendant's other

6   daughter by three $25,000 checks from Company#2 and $25,000 from Co-

7   conspirator#1.  This $100,000 constituted a bribe from Co-

8   conspirator#1 to defendant, in exchange for defendant agreeing to

9   steer, steering, agreeing to vote for, and voting in favor of the

10   County contracts with VAS.

11       Additionally, some of the funds that had been funneled to

12   defendant's daughters were also spent for the direct benefit of

13   defendant.  For example, during 2022, a total of $14,849 of funds

14   that had been funneled to defendant's daughters was used to make

15   property tax payments for two properties in Orange County owned by

16   defendant and his wife.  Likewise, approximately $15,000 was used to

17   pay for one of defendant's credit card bills.

18       <u>VAS was Not Providing Contracted for Meals.</u>

19       Of the approximately $9,300,000 that VAS had received from the

20   County to provide meals to elderly and disabled residents, only

21   around 15% (around $1,400,000) was spent (either directly by VAS or

22   through third party vendors VAS paid) for providing meals pursuant to

23   the NGP contracts.  A significant portion was spent — either directly

24   from VAS's bank account or through Company#1's bank accounts — for

25   the benefit of insiders, including to purchase properties (in the

26   name of both defendant's daughter or Company#1), bribe payments to

27   defendant's daughters, payments to Co-Conspirator#1 and Co-

28   Conspirator#2, payments to other companies affiliated with VAS's

17

1  listed officers, and through hundreds of thousands of dollars in cash

2  withdrawals.

3      Defendant knew that some of the funds VAS received from the

4  County were being used to pay bribes instead of to provide meals to

5  the elderly or infirm.  Defendant nonetheless intentionally voted on

6  the contracts in reckless disregard as to whether the funds were

7  being properly used.  He did this because of the influence of the

8  bribes he was paid through his daughters.  Defendant directed and

9  worked together with other County employees to approve contracts

10  with, and payments to, VAS.  In addition to steering and voting to

11  approve the funding to VAS, defendant was also directly involved in

12  promoting VAS via videos uploaded to the Internet in 2023.  In the

13  videos, Defendant claimed that VAS was providing 2,700 meals per

14  week, when, in fact, he had no idea whether that was true.  Defendant

15  did all of this because of the influence of the bribes he was

16  receiving.

17      The parties agree that for purposes of this plea agreement, the

18  applicable amount of bribes that defendant received is more than

19  $550,000 but less than $730,500.

20  SENTENCING FACTORS

21      **14.**  Defendant understands that in determining defendant's

22  sentence the Court is required to calculate the applicable Sentencing

23  Guidelines range and to consider that range, possible departures

24  under the Sentencing Guidelines, and the other sentencing factors set

25  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

26  Sentencing Guidelines are advisory only, that defendant cannot have

27  any expectation of receiving a sentence within the calculated

28  Sentencing Guidelines range, and that after considering the

Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

15.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 14 | U.S.S.G. § 2C1.1 |
| > 1 Bribe | +2 | U.S.S.G. § 2C1.1(b)(1) |
| $550,000 < Bribes < $1,500,000 | +14 | U.S.S.G. §§ 2C1.1(b)(2) 2B1.1(b)(1)(H) |
| Elected Public Official | +4 | U.S.S.G. § 2C1.1(b)(3) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

16.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

17.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

18.  Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.    The right to persist in a plea of not guilty.

    b.    The right to a speedy and public trial by jury.

    c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint

1  counsel -- at every other stage of the proceeding.

2          d.    The right to be presumed innocent and to have the

3  burden of proof placed on the government to prove defendant guilty

4  beyond a reasonable doubt.

5          e.    The right to confront and cross-examine witnesses

6  against defendant.

7          f.    The right to testify and to present evidence in

8  opposition to the charges, including the right to compel the

9  attendance of witnesses to testify.

10         g.    The right not to be compelled to testify, and, if

11 defendant chose not to testify or present evidence, to have that

12 choice not be used against defendant.

13         h.    Any and all rights to pursue any affirmative defenses,

14 Fourth Amendment or Fifth Amendment claims, and other pretrial

15 motions that have been filed or could be filed.

16                    WAIVER OF APPEAL OF CONVICTION

17    19.    Defendant understands that, with the exception of an appeal

18 based on a claim that defendant's guilty plea was involuntary, by

19 pleading guilty defendant is waiving and giving up any right to

20 appeal defendant's conviction on the offense to which defendant is

21 pleading guilty.  Defendant understands that this waiver includes,

22 but is not limited to, arguments that the statutes to which defendant

23 is pleading guilty are unconstitutional, and any and all claims that

24 the statement of facts provided herein is insufficient to support

25 defendant's plea of guilty.

26                WAIVER OF APPEAL AND COLLATERAL ATTACK

27    20.    Defendant agrees that, provided the Court imposes a total

28 term of imprisonment of no more than the statutory maximum, defendant

                                  20

1    gives up the right to appeal all of the following: (a) the procedures

2    and calculations used to determine and impose any portion of the

3    sentence; (b) the term of imprisonment imposed by the Court; (c) the

4    fine imposed by the Court, provided it is within the statutory

5    maximum; (d) to the extent permitted by law, the constitutionality or

6    legality of defendant's sentence, provided it is within the statutory

7    maximum; (e) the amount and terms of any restitution order; (f) the

8    term of probation or supervised release imposed by the Court,

9    provided it is within the statutory maximum; and (g) any of the

10    following conditions of probation or supervised release imposed by

11    the Court: the conditions set forth in Second Amended General Order

12    20-04 of this Court; the drug testing conditions mandated by 18

13    U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use

14    conditions authorized by 18 U.S.C. § 3563(b)(7).

15        21.   Defendant also gives up any right to bring a post-

16    conviction collateral attack on the conviction or sentence, including

17    any order of restitution, except a post-conviction collateral attack

18    based on a claim of ineffective assistance of counsel, a claim of

19    newly discovered evidence, or an explicitly retroactive change in the

20    applicable Sentencing Guidelines, sentencing statutes, or statutes of

21    conviction.   Defendant understands that this waiver includes, but is

22    not limited to, arguments that the statutes to which defendant is

23    pleading guilty are unconstitutional, and any and all claims that the

24    statement of facts provided herein is insufficient to support

25    defendant's plea of guilty.

26        22.   This agreement does not affect in any way the right of the

27    USAO to appeal the sentence imposed by the Court.

28

1                    RESULT OF WITHDRAWAL OF GUILTY PLEA

2        23.  Defendant agrees that if, after entering guilty pleas

3   pursuant to this agreement, defendant seeks to withdraw and succeeds

4   in withdrawing defendant's guilty pleas on any basis other than a

5   claim and finding that entry into this plea agreement was

6   involuntary, then (a) the USAO will be relieved of all of its

7   obligations under this agreement; and (b) should the USAO choose to

8   pursue any charge that was either dismissed or not filed as a result

9   of this agreement, then (i) any applicable statute of limitations

10  will be tolled between the date of defendant's signing of this

11  agreement and the filing commencing any such action; and

12  (ii) defendant waives and gives up all defenses based on the statute

13  of limitations, any claim of pre-indictment delay, or any speedy

14  trial claim with respect to any such action, except to the extent

15  that such defenses existed as of the date of defendant's signing this

16  agreement.

17                    EFFECTIVE DATE OF AGREEMENT

18       24.  This agreement is effective upon signature and execution of

19  all required certifications by defendant, defendant's counsel, and an

20  Assistant United States Attorney.

21                    BREACH OF AGREEMENT

22       25.  Defendant agrees that if defendant, at any time after the

23  signature of this agreement and execution of all required

24  certifications by defendant, defendant's counsel, and an Assistant

25  United States Attorney, knowingly violates or fails to perform any of

26  defendant's obligations under this agreement ("a breach"), the USAO

27  may declare this agreement breached.  All of defendant's obligations

28  are material, a single breach of this agreement is sufficient for the

USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

26.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any

1  evidence derived from the statements should be suppressed or are

2  inadmissible.

3      COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

4                  OFFICE NOT PARTIES

5      27.  Defendant understands that the Court and the United States

6  Probation and Pretrial Services Office are not parties to this

7  agreement and need not accept any of the USAO's sentencing

8  recommendations or the parties' agreements to facts or sentencing

9  factors.

10     28.  Defendant understands that both defendant and the USAO are

11  free to: (a) supplement the facts by supplying relevant information

12  to the United States Probation and Pretrial Services Office and the

13  Court, (b) correct any and all factual misstatements relating to the

14  Court's Sentencing Guidelines calculations and determination of

15  sentence, and (c) argue on appeal and collateral review that the

16  Court's Sentencing Guidelines calculations and the sentence it

17  chooses to impose are not error, although each party agrees to

18  maintain its view that the calculations in paragraph 15 are

19  consistent with the facts of this case.  While this paragraph permits

20  both the USAO and defendant to submit full and complete factual

21  information to the United States Probation and Pretrial Services

22  Office and the Court, even if that factual information may be viewed

23  as inconsistent with the facts agreed to in this agreement, this

24  paragraph does not affect defendant's and the USAO's obligations not

25  to contest the facts agreed to in this agreement.

26     29.  Defendant understands that even if the Court ignores any

27  sentencing recommendation, finds facts or reaches conclusions

28  different from those agreed to, and/or imposes any sentence up to the

1  maximum established by statute, defendant cannot, for that reason,

2  withdraw defendant's guilty plea, and defendant will remain bound to

3  fulfill all defendant's obligations under this agreement.  Defendant

4  understands that no one -- not the prosecutor, defendant's attorney,

5  or the Court -- can make a binding prediction or promise regarding

6  the sentence defendant will receive, except that it will within the

7  statutory maximum.

NO ADDITIONAL AGREEMENTS

9      30.   Defendant understands that, except as set forth herein,

10  there are no promises, understandings, or agreements between the USAO

11  and defendant or defendant's attorney, and that no additional

12  promise, understanding, or agreement may be entered into unless in a

13  writing signed by all parties or on the record in court.

14  ///

15  ///

16  ///

1          <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2     31.  The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF

7 CALIFORNIA

8 E. MARTIN ESTRADA
United States Attorney

9

10 _____     10.18.2024

11 CHARLES E. PELL            Date
BRADLEY E. MARRETT

12 Assistant United States Attorneys
Santa Ana Branch Office

13

14 _____     10/18/24
ANDREW HOANG DO            Date

15 Defendant

16 _____     10/18/24
PAUL MEYER/ELIOT KRIEGER    Date

17 Attorneys for Defendant
ANDREW HOANG DO

18                <u>CERTIFICATION OF DEFENDANT</u>

19     I have read this agreement in its entirety. I have had enough

20 time to review and consider this agreement, and I have carefully and

21 thoroughly discussed every part of it with my attorney. I understand

22 the terms of this agreement, and I voluntarily agree to those terms.

23 I have discussed the evidence with my attorney, and my attorney has

24 advised me of my rights, of possible pretrial motions that might be

25 filed, of possible defenses that might be asserted either prior to or

26 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

27 of relevant Sentencing Guidelines provisions, and of the consequences

28 of entering into this agreement. No promises, inducements, or

representations of any kind have been made to me other than those
contained in this agreement. No one has threatened or forced me in
any way to enter into this agreement. I am satisfied with the
representation of my attorney in this matter, and I am pleading
guilty because I am guilty of the charge and wish to take advantage
of the promises set forth in this agreement, and not for any other
reason.

_____          10/18/24
ANDREW HOANG DO                           Date
Defendant


                CERTIFICATION OF DEFENDANT'S ATTORNEY

    I am ANDREW HOANG DO's attorney. I have carefully and
thoroughly discussed every part of this agreement with my client.
Further, I have fully advised my client of his rights, of possible
pretrial motions that might be filed, of possible defenses that might
be asserted either prior to or at trial, of the sentencing factors
set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
provisions, and of the consequences of entering into this agreement.
To my knowledge: no promises, inducements, or representations of any
kind have been made to my client other than those contained in this
agreement; no one has threatened or forced my client in any way to
enter into this agreement; my client's decision to enter into this
agreement is an informed and voluntary one; and the factual basis set
forth in this agreement is sufficient to support my client's entry of
a guilty plea pursuant to this agreement.

_____          10/18/24
PAUL MEYER/ELIOT KRIEGER                  Date
Attorneys for Defendant
ANDREW HOANG DO

                              27

# Exhibit 1



# United States Department of Justice

## United States Attorney's Office
## Central District of California

---

*AUSAs Charles E. Pell / Bradley E. Marrett*
*Phone:   (714) 338-3542 / 3505*
*E-mail:   charles.e.pell2@usdoj.gov / bradley.marrett@usdoj.gov*

*8000 United States Courthouse*
*411 West Fourth Street*
*Santa Ana, California  92701*

October 18, 2024

<u>Via Email</u>

David W. Wiechert
Jessica C. Munk
WIECHERT, MUNK, & GOLDSTEIN, PC
4000 MacArthur Boulevard
Suite 600 East Tower
Newport Beach, California 92660
dwiechert@aol.com

     Re:    <u>**In re: Rhiannon Do, et al.**</u>

Dear Mr. Wiechert/Ms. Munk:

You have advised me that your client, Rhiannon Do ("defendant"), having committed a violation of False Statement in a Loan Application, in violation of Title 18, United States Code, Section 1014 (the "offense"), wishes to participate in Pretrial Diversion ("Diversion"). Both you and defendant agree that defendant committed the offense within the Central District of California by engaging in the following conduct: In July 2023, defendant signed a final loan application, which contained false statements and representations made by third parties that were intended to influence a covered financial institution, without reviewing the final loan application in willful blindness as to the truth or falsity of such statements and representations. Both you and defendant further agree that the conduct described above constitutes a violation of California Penal Code §§ 118(a) (perjury by declaration), 532a (false statement in writing), and 532f (mortgage fraud) committed within the County of Orange, California. By signing this letter agreement ("Letter Agreement"), defendant admits the criminal conduct described above and acknowledges responsibility for this criminal conduct.

After an investigation of the offense and defendant's background, the United States Attorney's Office for the Central District of California (the "USAO") and the Orange County District Attorney ("OCDA"), agree that the interests of justice will be served by a period of diversion to be administered under the supervision of the United States Pretrial Services Agency ("Pretrial Services") and an assigned Pretrial Services Officer ("PSO").

Accordingly, the USAO and OCDA agree that prosecution of defendant for the offense shall be deferred until defendant's cooperation with the USAO and OCDA is complete, provided defendant

Exhibit 1

David Wiechert/Jessica Munk
RE: Diversion Agreement – Rhiannon Do
October 18, 2024

abides by all of the following conditions of diversion, to which defendant agrees by signing this
Letter Agreement:

(1)      Supervision by the United States Probation and Pretrial Services Office for a period
of three years. While under such supervision, defendant shall:

    a.  Answer truthfully all inquiries by the PSO and follow her/his instructions and any
       additional Conditions imposed by her/him;

    b.  Report to the PSO as directed by her/him;

    c.  Not violate any law (federal, state, or local (exclusive of minor traffic infractions));

    d.  Advise the PSO within 48 hours if arrested and/or questioned by any law
       enforcement officer;

    e.  Attend school (which shall include preparatory studies for a state bar examination) or
       work or seek work regularly at a lawful occupation unless excused by the PSO.  If
       defendant becomes unemployed or is unable or unwilling to attend school,
       defendant shall notify the PSO within 24 hours.  Defendant will inform PSO prior to
       making any school or work changes;

    f.  Notify the PSO at least ten days prior to any change of residence.  If defendant
       intends to move out of the Central District of California (Los Angeles, Orange,
       Riverside, San Bernardino, Ventura, Santa Barbara, and San Luis Obispo Counties),
       defendant must notify the PSO at least 30 days prior to the intended move so that
       the appropriate transfer of program responsibility can be made;

    g.  Permit the PSO to visit at any time at home;

    h.  Not leave the United States without prior permission of the PSO;

(2)      Forfeit all right, title, and interest in and to any and all monies, properties, and/or
assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or
involved in, the illegal activity to which defendant is admitting, which is mortgage fraud related to
VAS, specifically including, but not limited to, the following: a single family residence located at
14732 Candeda Place, Tustin, California 92780 (the "Forfeitable Property"), which includes
defendant's obligations to (a) agree to the entry of an order of forfeiture at the earliest date
requested by the USAO with respect to the Forfeitable Property and to the forfeiture of the
Property; (b) take whatever steps are necessary to pass to the United States clear title to the
Forfeitable Property, including, without limitation, the execution of a consent decree of forfeiture
and the completing of any other legal documents required for the transfer of title to the United
States; (c) not contest any administrative forfeiture proceedings or civil judicial proceedings
commenced against the Forfeitable Property; (d) waive any right she may have to seek remission or
mitigation of the forfeiture of the Forfeitable Property; (e) not assist any other individual in any
effort falsely to contest the forfeiture of the Forfeitable Property; (f) not claim that reasonable cause
to seize the Forfeitable Property was lacking; (g) prevent the transfer, sale, destruction, or loss of the

David Wiechert/Jessica Munk
RE: Diversion Agreement – Rhiannon Do
October 18, 2024

Forfeitable Property to the extent defendant has the ability to do so; and (h) fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO, within 30 days of execution of this agreement.

(3)        Pursuant to 18 U.S.C. § 3663(a)(1)(A), the parties agree that a court would be authorized to order restitution to a victim other than the victim of an offense, if agreed to by the parties in an agreement. Defendant has not been charged with, admitted to, or been found guilty of any other offense, which could have required additional restitution.  Nonetheless, defendant agrees that defendant will pay restitution in an amount not to exceed $730,500, in the amount determined by the Court in the criminal case against Andrew Do, for which defendant will be jointly and severally liable with Andrew Do.  Restitution is due to the United States Department of Treasury. Defendant shall make restitution payments, if any, beginning 60 days after the Judgment and Commitment issues in the criminal case against Andrew Do, as directed by PSO based on ability to pay.

(4)        Cooperate fully with the USAO, the FBI, the OCDA, and, as directed by the USAO or OCDA, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.  This cooperation requires defendant to:

a.  Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b.  Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO, the OCDA, or compelled by subpoena or court order.

c.  Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, the OCDA, or its designee, inquires.

Should defendant violate any of the conditions of diversion set forth above, the USAO may at any time: (1) revoke or modify any of the conditions of diversion; (2) lengthen the period of diversion; or (3) terminate diversion and reinitiate prosecution for the offense.  Any decision to revoke, modify, lengthen, or terminate diversion and reinitiate federal prosecution rests solely with the USAO in its exclusive discretion; any decision to initiate prosecution in the Superior Court of California for a violation of the conditions set forth above rests solely with the OCDA in its exclusive discretion.  At the time the USAO makes any such decision, it will furnish counsel for defendant with written notice specifying the condition(s) of diversion defendant has violated and the reasons why diversion is being revoked, modified, lengthened, or terminated; if the OCDA has determined defendant has violated diversion, it will furnish counsel for defendant with written notice specifying the condition(s) of diversion defendant has violated. Both the USAO and OCDA agree that following any such notice, the USAO and OCDA will meet and confer, in good faith, with counsel for defendant, prior to revoking, modifying, or terminating diversion or reinstating prosecution.  Defendant understands and agrees that the USAO's or the OCDA's respective determinations of whether defendant has complied with the cooperation condition, number 4 *supra*, rests in the USAO's and the OCDA's exclusive, respective judgments.

3

David Wiechert/Jessica Munk
RE: Diversion Agreement – Rhiannon Do
October 18, 2024

Should prosecution of defendant for the offense be reinitiated by the USAO, defendant agrees that any period of delay in prosecution occasioned by this Letter Agreement shall be excluded from consideration as to any rights defendant may have to a speedy trial under the Sixth Amendment to the United States Constitution, the Speedy Trial Act (18 U.S.C. §§ 3161 et seq.), the Federal Rules of Criminal Procedure (including Rule 48(b)), and/or the applicable statute of limitations.

Should prosecution of defendant be initiated by the OCDA, defendant agrees that any period of delay in prosecution occasioned by this Letter Agreement shall be excluded from consideration as to any rights defendant may have to a speedy trial under the Sixth Amendment to the United States Constitution, the California Speedy Trial Act (Penal Code § 1382 et seq.), the due process clause of the Fourteenth Amendment to the United States Constitution, and/or the applicable statute of limitations

Should prosecution of defendant for the offense be reinitiated by the USAO or initiated by the OCDA, the USAO and the OCDA agree that neither this Letter Agreement nor any information obtained from defendant as the result of defendant's participation in diversion will be used against defendant in the government's or state's case-in-chief, except that the USAO or the OCDA may:

> (a)    Use all information derived directly or indirectly from any meetings for the purpose of obtaining and pursuing leads to other evidence (including any information or data obtained from digital devices upon your client's disclosure of any passwords or PINs during the meeting), which evidence may be used for any purpose, including any prosecution of your client;

> (b)    Use statements made by defendant and all evidence obtained directly or indirectly from those statements for the purpose of cross-examination should defendant testify, or to refute or counter at any stage of the proceedings (including this Office's case-in-chief at trial) any evidence, argument, statement or representation offered by or on behalf of defendant in connection with any proceeding;

> (c)    Disclose statements made by defendant at any meetings and all evidence obtained directly or indirectly from those statements to the United States Probation and Pretrial Services Office and/or the Court, which may use such information for the purposes set forth in U.S.S.G. § 1B1.8(b) and for determining any sentence to be imposed; and

> (d)    Use any statements or information provided by defendant in any prosecution for false statements, obstruction of justice or perjury.

If, upon completion of defendant's period of diversion, a diversion report is received by the USAO from Pretrial Services to the effect that defendant has complied with all the conditions of diversion set forth above, no criminal prosecution of defendant for the above described offense will be instituted by the USAO or the OCDA, and the USAO will move to dismiss with prejudice any citation, complaint, indictment, or information charging defendant for the offense.

The obligations of the USAO and the OCDA under this Letter Agreement are conditioned on the execution by Andrew Hoang Do of a plea agreement, entry of plea of guilty, sentencing, and entry of a judgment and commitment order against Andrew Do in connection with this investigation.

David Wiechert/Jessica Munk
RE: Diversion Agreement – Rhiannon Do
October 18, 2024

In the Central District of California, Pretrial Services is located at the Roybal Federal Building, 255 East Temple Street, Los Angeles, California 90012. By executing this Letter Agreement, defendant acknowledges defendant's understanding that supervision of defendant's period of diversion may be transferred to another Judicial District and/or Branch Office of Pretrial Services.

This Letter Agreement will be effective only upon signature by the AUSA, the Orange County District Attorney, defendant, defendant's counsel, and the PSO. After reviewing this Letter Agreement, the PSO may request changes or additional conditions before signature. In that case, this Letter Agreement signed by the AUSA, the Orange County District Attorney, defendant, and defendant's counsel will be void, and a new letter agreement with the changes required by the PSO should be prepared for signature by all necessary parties.

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

_____          10.18.2024
CHARLES E. PELL                              _____
BRADLEY E. MARRETT                           Date
Assistant United States Attorneys
Santa Ana Branch Office

_____          _____
U.S. Pretrial Services Officer               Date

_____          October 18, 2024
TODD A. SPITZER                              _____
District Attorney – Public Administrator     Date

I have read the agreement contained in this Letter Agreement and carefully reviewed it with my attorney. I understand it, and I voluntarily, knowingly and willfully agree to all of its terms, including in particular the specified conditions of diversion. I have not been subjected to any force, threat, or coercion in agreeing to the terms of this Letter Agreement, and no other promises or inducements have been made to me other than those contained in this Letter Agreement. I acknowledge

///

David Wiechert/Jessica Munk
RE: Diversion Agreement – Rhiannon Do
October 18, 2024

responsibility for my criminal conduct as described above. I am satisfied with the representation of my attorneys in this matter.

_____      10/18/24
RHIANNON DO                          _____
                                     Date

I am RHIANNON DO's attorney. I have carefully discussed every part of this Letter Agreement with my client. To my knowledge, my client's decision to enter into this Letter Agreement is an informed and voluntary one.

_____      10/18/24
DAVID WIECHERT/JESSICA MUNK          _____
Attorneys for RHIANNON DO            Date

6

# Exhibit 2

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                         SOUTHERN DIVISION

11   UNITED STATES OF AMERICA,          No.

12             Plaintiff,               I N F O R M A T I O N

13             v.                       [18 U.S.C. § 371: Conspiracy to
                                        Commit Bribery Concerning Programs
14   ANDREW HOANG DO,                   Receiving Federal Funds; 18 U.S.C.
                                        § 981(a)(1)(C) and 28 U.S.C.
15             Defendant.               § 2461(c): Forfeiture]

16

17        The United States Attorney charges:

18                       [18 U.S.C. § 371]

19   A.   INTRODUCTORY ALLEGATIONS

20        At times relevant to this Information:

21        1.   Defendant ANDREW HOANG DO was a public official employed by

22   the County of Orange ("County"), within the Central District of

23   California.  Defendant DO was a member of the Orange County Board of

24   Supervisors ("Board of Supervisors") for the First District from

25   approximately 2015 to present.

26        2.   As a public official employed by the County, defendant DO

27   owed a fiduciary duty to the citizens of the County to perform the

28   duties and responsibilities of his office free from bias, conflicts

                              Exhibit 2

1  of interest, self-enrichment, self-dealing, concealment, deceit,

2  fraud, kickbacks, and bribery.

3      3.    The County was a local government that received benefits in

4  excess of $10,000 under a Federal program involving a grant,

5  contract, subsidy, loan, guarantee, insurance, and other forms of

6  Federal assistance in each of the calendar years 2020 through 2024.

7      4.    DO Relative #1 and DO Relative #2 were defendant DO's

8  daughters.

9  B.    OBJECT OF THE CONSPIRACY

10      5.    Beginning in or around May 2020 and continuing to in or

11  around August 2024, in Orange County, within the Central District of

12  California, defendant DO conspired with Co-Conspirator #1,

13  Co-Conspirator #2, and others known and unknown to the United States

14  Attorney, to knowingly and intentionally commit an offense against

15  the United States, namely, Bribery Concerning Programs Receiving

16  Federal Funds, in violation of Title 18, United States Code, Sections

17  666(a)(1)(B), (a)(2).

18  C.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE

19         ACCOMPLISHED

20      6.    The object of the conspiracy was to be accomplished, in

21  substance, as follows:

22          a.    Defendant DO would solicit, demand, accept, and agree

23  to accept direct and indirect financial benefits from

24  Co-Conspirator #1, Co-Conspirator #2, and others, in exchange for

25  official acts to benefit Co-Conspirator #1 and Co-Conspirator #2.

26          b.    In exchange for direct and indirect financial benefits

27  from Co-Conspirator #1, Co-Conspirator #2, and others, defendant DO

28  would agree to perform and perform official acts, including, among

others, voting to award federally funded and state funded County

contracts to Co-Conspirator #1 through an entity known as Viet

America Society ("VAS").

        c.   In exchange for such official acts by defendant DO,

Co-Conspirator #1, Co-Conspirator #2, and others would give, offer,

and agree to give direct and indirect financial benefits to defendant

DO, including, but not limited to: (1) give DO Relative #1 a position

at VAS, (2) pay bribes to defendant DO disguised as VAS employment-

related payments to DO Relative #1, (3) pay bribes to defendant DO

disguised as an earnest money deposit and a down payment for a home

for DO Relative #1, and (4) pay bribes to defendant DO disguised as

payments to DO Relative #2.

D.   OVERT ACTS

    7.   On or about the following dates, in furtherance of the

conspiracy and to accomplish the objects of the conspiracy, defendant

DO, Co-Conspirator #1, Co-Conspirator #2, and others known and

unknown to the United States Attorney committed and caused to be

committed various overt acts within the Central District of

California, and elsewhere, including the following:

   Overt Act No. 1:   On June 2, 2020, defendant DO voted in favor

of Agenda Item S66 D, which, in part, authorized allocation of

Coronavirus Aid, Relief, and Economic Security Act funds to Board of

Supervisors districts, including the First District, that could be

distributed at the discretion of each Supervisor, including by

defendant DO.

   Overt Act No. 2:   On April 27, 2021, defendant DO voted in

favor of Agenda Item 54, which, in part, authorized allocation of

American Rescue Plan Act funds to Board of Supervisors districts,

including the First District, that could be distributed at the
discretion of each Supervisor, including by defendant DO.

Overt Act No. 3:   On September 8, 2021, VAS, which was
controlled by Co-Conspirator #1, increased monthly payments to
Company #1, which was controlled by Co-Conspirator #1 and Co-
Conspirator #2, by $8,000 per month (from $100,000 to $108,000), and
in turn began paying $8,000 per month to DO Relative #1.

Overt Act No. 4:   On September 28, 2021, defendant DO voted in
favor of Agenda Item 35, which, in part, authorized allocation of
American Rescue Plan Act funds to Board of Supervisors districts,
including the First District, that could be distributed at the
discretion of each Supervisor, including by defendant DO.

Overt Act No. 5:   On September 13, 2022, defendant DO voted in
favor of Supplemental Agenda Item S32F, which was submitted by
defendant DO, to approve additional American Rescue Plan Act funds to
Board of Supervisors districts, including the First District.

Overt Act No. 6:   On September 22, 2022,
Co-Conspirator #1 wrote a check to DO Relative #2 for $25,000, which
was deposited into DO Relative #2's Citibank account ending in 1424.

Overt Act No. 7:   On October 14, 2022, Company #2 wrote a
check to DO Relative #2 for $25,000, which was deposited into DO
Relative #2's Citibank account ending in 1424.

Overt Act No. 8:   On November 29, 2022, defendant DO voted in
favor of Agenda Item 36, a contract with Entity #1, for which VAS was
a subcontractor.

Overt Act No. 9:   On May 23, 2023, defendant DO voted in favor
of Agenda Item 13, relating to a contract amendment with Entity #2,
for which VAS was a subcontractor.

4

<u>Overt Act No. 10:</u>   In or around July 2023, Company #1 transferred a total of $381,500 received from VAS to an escrow company to facilitate DO Relative #1's purchase of a home in Tustin, California.

1                       FORFEITURE ALLEGATION

2              [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3        1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 18,

6   United States Code, Section 981(a)(1)(C) and Title 28, United States

7   Code, Section 2461(c), in the event of the defendant's conviction of

8   the offense set forth in this Information.

9        2.    The defendant, if so convicted, shall forfeit to the United

10  States of America the following:

11            (a)   All right, title and interest in any and all property,

12  real or personal, constituting, or derived from, any proceeds

13  traceable to such offense; and

14            (b)   To the extent such property is not available for

15  forfeiture, a sum of money equal to the total value of the property

16  described in subparagraph (a).

17       3.    Pursuant to Title 21, United States Code, Section 853(p), as

18  incorporated by Title 28, United States Code, Section 2461(c), the

19  defendant shall forfeit substitute property, up to the total value of

20  the property described in the preceding paragraph if, as the result

21  of any act or omission of the defendant, the property described in

22  the preceding paragraph, or any portion thereof: (a) cannot be

23  located upon the exercise of due diligence; (b) has been transferred,

24  sold to or deposited with a third party; (c) has been placed beyond

25  ///

26  ///

27  ///

28  ///

6

the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.




                                    E. MARTIN ESTRADA
                                    United States Attorney


                                    MACK E. JENKINS
                                    Assistant United States Attorney
                                    Chief, Criminal Division

                                    ANNE C. GANNON
                                    Assistant United States Attorney
                                    Chief, Santa Ana Branch Office

                                    BRADLEY E. MARRETT
                                    Assistant United States Attorney
                                    Deputy Chief, Santa Ana Branch
                                    Office

                                    CHARLES E. PELL
                                    Assistant United States Attorney
                                    Santa Ana Branch Office

# Exhibit 3



OFFICE OF THE

# DISTRICT ATTORNEY

ORANGE COUNTY, CALIFORNIA

TODD SPITZER

October 17, 2024

<u>Via Email Delivery</u>

Eliot Krieger
SKT LAW
7755 Center Avenue
Suite 1225
Huntington Beach, California 92674

Paul S. Meyer
695 Town Center Drive
Suite 875
Costa Mesa, California 92626

      **Re:**   <u>**United States of America v. Andrew Hoang Do**</u>

Dear Mr. Krieger and Mr. Meyer:

You have advised me that your client, Andrew Hoang Do ("defendant"), having committed a violation of Conspiracy to Commit Bribery Concerning Programs Receiving Federal Funds, in violation of Title 18, United States Code, Section 371 (the "offense"), wishes to enter a plea of guilty to this charge via a plea agreement with the United States Attorney's Office for the Central District of California ("the USAO"). Both you and defendant further agree that the conduct described above constitutes a violation of California Penal Code § 165 (bribery by a Board of Supervisors member) and California Government Code § 1090 (conflict of interest) committed within the County of Orange, California. By signing this letter agreement ("Letter Agreement"), defendant admits the criminal conduct described above and acknowledges responsibility for this criminal conduct. This Letter Agreement fully incorporates all terms and conditions set forth in the plea agreement with the USAO, including all restitution provisions.

The Orange County District Attorney ("OCDA"), having jointly investigated and prosecuted this matter with the USAO, agrees that the interests of justice will be served by the plea agreement with the USAO. Accordingly, the OCDA agrees that any state prosecution of defendant for any crime arising from the same operative facts which are the basis for the plea agreement shall be declined so long as defendant executes the plea agreement with the USAO, enters a plea of guilty to the federal charge set forth above, is sentenced on, and entry of a judgment and commitment order is entered against defendant in connection with this investigation, and so long as defendant fulfills the terms and conditions set forth in this Letter Agreement.

If defendant in any way breaches the plea agreement with the USAO, or for any other reason does not plead guilty to the federal charge listed above or is not sentenced on the charge or does not have a judgment and commitment order entered against him, this Letter Agreement is null and void.

Should defendant violate any of the conditions of nonprosecution set forth herein, the OCDA may at any time

Exhibit 3

initiate prosecution for the offenses. Any decision to initiate state prosecution rests solely with the OCDA in its exclusive discretion. At the time the OCDA makes any such decision, it will furnish counsel for defendant with written notice specifying the condition(s) of this Letter Agreement defendant has violated and the reasons why the Letter Agreement is being terminated and prosecution initiated.

Should prosecution of defendant be initiated by the OCDA, defendant agrees that any period of delay in prosecution occasioned by this Letter Agreement shall be excluded from consideration as to any rights defendant may have to a speedy trial under the Sixth Amendment to the United States Constitution, the California Speedy Trial Act (Penal Code § 1382 et. seq.), the due process clause of the Fourteenth Amendment to the United States Constitution, and/or the applicable statute of limitations.

Should prosecution of defendant for the offense be reinitiated by the USAO or initiated by the OCDA, the OCDA agrees that this Letter Agreement will not be used against defendant in the government's case-in-chief, except that the OCDA may:

Use all information derived directly or indirectly from any meetings for the purpose of obtaining and pursuing leads to other evidence (including any information or data obtained from digital devices upon your client's disclosure of any passwords or PINs during the meeting), which evidence may be used for any purpose, including any prosecution of your client;

Use statements made by defendant and all evidence obtained directly or indirectly from those statements for the purpose of cross-examination should defendant testify, or to refute or counter at any stage of the proceedings (including this Office's case-in-chief at trial) any evidence, argument, statement or representation offered by or on behalf of defendant in connection with any proceeding;

Disclose statements made by defendant at any meetings and all evidence obtained directly or indirectly from those statements to the United States Probation and Pretrial Services Office and/or the Court made in conjunction with the plea agreement and sentencing as to the applicable federal charges, which may use such information for the purposes set forth in U.S.S.G. § 1B1.8(b) and for determining any sentence to be imposed; and

Use any statements or information provided by defendant in any prosecution for false statements, obstruction of justice or perjury.

Additionally, defendant must resign immediately from his position as a Supervisor on the Orange County Board of Supervisors. Defendant's resignation shall be interpreted to mean a public statement of his resignation coupled with a formal letter of resignation to the Clerk of the Board and the County Executive Officer for the County of Orange and the completion of any attendant procedures required to initiate resignation from the Orange County Board of Supervisors. The formal letter of resignation shall be dated, signed, and tendered on or before the same date as defendant's first appearance in federal court on this matter. Defendant's public statement of resignation shall occur at or after the time of any press statement from the USAO announcing the filing of defendant's plea agreement but no later than the date of the defendant's first appearance in federal court on this matter.

Defendant agrees and stipulates that, for purposes of California Government Code section 7522.74, the earliest date of the conduct constituting the commission of the felony to which defendant is pleading guilty, the offense, began on June 2, 2020, and that this conduct arises out of or in the performance of his official duties.

Defendant acknowledges that this Letter Agreement shall be submitted to the Orange County Employee Retirement System ("OCERS"). Defendant further agrees not to contest the date of the commission of the offense with OCERS and any subsequent calculations or recalculations of any retirement or other benefit paid to defendant arising from his employment with the County of Orange as a Supervisor on the Orange County Board of Supervisors.

///

This Letter Agreement will be effective only upon signature by the Orange County District Attorney, defendant, and defendant's counsel.

_____
TODD A. SPITZER
District Attorney – Public Administrator

_____
Date

10-18-2024

I have read the agreement contained in this Letter Agreement and carefully reviewed it with my attorney. I understand it, and I voluntarily, knowingly and willfully agree to all of its terms. I have not been subjected to any force, threat, or coercion in agreeing to the terms of this Letter Agreement, and no other promises or inducements have been made to me other than those contained in this Letter Agreement. I acknowledge responsibility for my criminal conduct as described above. I am satisfied with the representation of my attorney in this matter.

_____
ANDREW HOANG DO

_____
Date

10/18/24

I am ANDREW HOANG DO's attorney. I have carefully discussed every part of this Letter Agreement with my client. To my knowledge, my client's decision to enter into this Letter Agreement is an informed and voluntary one.

_____
ELIOT KRIEGER
PAUL S. MEYER
Attorneys for ANDREW HOANG DO

_____
Date

10/18/24