PAUL S. MEYER, State Bar No. 51146
pmeyer@meyerlawoc.com
PAUL S. MEYER, A PROFESSIONAL CORPORATION
695 Town Center Drive, Suite 875
Costa Mesa, California 92626
Telephone: 714.754.6500
Facsimile: 714.979.9047

SKT LAW, P.C.
Eliot F. Krieger, State Bar No. 159647
7755 Center Avenue, Suite 1225
Huntington Beach, CA 92647
Telephone: 949 523 3333
Facsimile: 949 523 3003
Email: ekrieger@skt.law

Attorneys for Defendant ANDREW HOANG DO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION – Santa Ana

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW HOANG DO,<br><br>Defendant. | Case No. 8:24-cr-00126-JVS<br><br>**DEFENDANT ANDREW DO'S RESTITUTION HEARING POSITION**<br><br>Date: August 11, 2025<br>Time: 9:00 a.m.<br>Place: Courtroom 10C<br>Judge: Hon. James V. Selna |

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT .................................4

II. CONSPIRACY ONE IS THE APPROPRIATE FOUNDATION FOR THE COURT'S CONSIDERATION, AND THUS THE PARTIES' AGREED UPON RESTITUTION AT (OR BELOW) $868,612 AS DISCUSSED HEREIN IS THE JUST RESULT IN THIS MATTER ......................................7

    A. The Proper Amount of Restitution Should Be $868,612 or Below Based on the Actual Offense to Which Mr. Do has Pled Guilty, and Should Not Be Based on Other Related Offenses of Which He has Not Been Convicted..................................................................................................7

    B. While Mr. Do has Entered a Guilty Plea to Conspiracy to Commit Bribery, There is No Evidence or Allegation He Knew that Co-Conspirators were Allegedly Stealing Millions by Failing to Provide Contracted-For Services .................................................................................9

III. IF THE COURT CHOOSES TO REJECT THE PROPOSALS OF BOTH THE GOVERNMENT AND MR. DO'S COUNSEL, AND DETERMINE RESTITUTION BASED ON CONSPIRACY TWO, ANDREW DO'S LEVEL OF CONTRIBUTION AND ECONOMIC CIRCUMSTANCES SUPPORT APPORTIONMENT WITHIN THE RANGE DESCRIBED BY THE PLEA AGREEMENT ..........................................................................................10

    A. The Court Has Discretion to Order Apportionment of Restitution Pursuant to 18 U.S.C. Section 3664(H) ........................................................................10

    B. Andrew Do's Level of Contribution is Mitigated by an Absence of Awareness of Any Lack of Meal Deliveries and Certainly Any Awareness of Alleged Theft by Others in the Conspiracy ............................................11

    C. Andrew Do Should Not Be Held Responsible for Losses He Did Not Anticipate or Even Know About .....................................................................12

    D. Mr. Do's Economic Circumstances Warrant an Order Within the $550,000 to $730,000+ Range ........................................................................12

    E. Equitable Circumstances Support Apportioning Restitution, Resulting in an Amount Within the $550,000 to $730,500+ Range ................................13

        1. Andrew Do Relied on the Plea Agreement Verification of the

Restitution Amount to be Expected in the Future ............................ 13

    2. The Court Should Agree With the Government And Not Accept the Victim's Later Claim Via an Impact Statement By a Victim Who had Agreed to a Lesser Figure, Through the Representation of the District Attorney .................................................................................................. 13

IV. IF THE COURT ACCEPTS BOTH GOVERNMENT AND MR. DO's COUNSEL UNIFIED POSITION, THE RESTITUTION WOULD BE NO HIGHER THAN $868,612 AND SUBJECT TO ONE FURTHER REDUCTION AS SHOWN BELOW............................................................... 15

    A. <u>Rhiannon's Work with Warner Wellness</u> ..................................................... 16

V. THE COURT MAY ALSO ORDER PAYMENTS COMMENSURATE WITH MR. DO'S ECONOMIC CIRCUMSTANCES ................................... 18

VI. CONCLUSION ................................................................................................ 18

# TABLE OF AUTHORITIES

**CASES**

*Hughey v. United States*, 495 U.S. 411, 413, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990) .................................................................................. 8

*United States v. Anderson*, 741 F.3d 938, 951 (9th Cir. 2013) ............................... 8

*United States v. Batson*, 608 F.3d 630, 636 (9th Cir.2010) .................................... 8

*United States v. Ferdman*, 779 F.3d 1129, 1133 (10th Cir. 2015) ......................... 8

*United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 927 (9th Cir.2001) ...................................................................................................... 8

*United States v. Garcia-Sanchez*, 189 F.3d 1143, 1148-49 (9th Cir. 1999) ....................................................................................................... 8

*United States v. Kilpatrick*, 798 F.3d 365, 388 (6th Cir. 2015) .............................. 8

*United States v. Peter Anh Pham and Thanh Huong Nguyen* .............................. 10

*United States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008) ................................ 8

**STATUTES**

18 U.S.C. 3664(f) ...................................................................................................... 18

18 U.S.C. Section 3664(h) ............................................................ 4, 5, 6, 10, 11, 12

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Andrew Do, through counsel, begins this Position with the understanding following discussion with the Government that both the Government and Mr. Do's counsel are in accord that the appropriate restitution in this matter should be confined to those monies received by Mr. Do and his daughters. We fully anticipate that the Government's brief will confirm this. Monies received is agreed upon as $868,612. The only issue is whether a deduction for work actually performed by daughter Rhiannon Do is warranted. Should the Court consider this reduction, we recommend to the Court that a minimum wage level be accorded for the hours performed, for a reduction leading to a total of $802,692.

We also recognize that this Court is not bound by the Plea Agreement or by any positions urged by any counsel. We believe that the good faith positions of both sides, after diligent investigation and legal research, should be given great weight by this Court.

Because the Court will appropriately take an independent view of this matter, we ask this Court to consider that the appropriate restitution for Mr. Do should be evaluated in either of two ways. First, the restitution loss figure should be calculated based on the amount of the bribes received by Mr. Do, as was agreed by the parties and set forth in the Plea Agreement. Second, if the Court chooses to consider a greater loss amount, that loss amount should be apportioned pursuant to 18 U.S.C. Section 3664(h), down to the amount of bribes received by Mr. Do, based on the significant factors described in this Position.

In the Court's analysis, as we believe is confirmed by the Government and Mr. Do's counsel, we ask the Court to consider that there are actually two conspiracies arising from the facts in this case, that Andrew Do has pled to one, and that restitution should be ordered commensurate with his plea. In any event, an order for restitution of no more than *$868,612 (and may be lower after reviewing the appropriate reductions noted below)* is the just result in light of all others,

1  charged and uncharged, and in light of the knowledge and intent of Mr. Do.
2  Further, we ask that the Court consider only admissible and reliable evidence in
3  reaching any decision. In this Position we discuss the discretion provided by 18
4  U.S.C. Section 3664(h) and other significant factors.
5       To elaborate on the foregoing, the two conspiracies are as follows:
6  Conspiracy One, Andrew Do's conspiracy with Peter Pham of Viet America
7  Society, to provide benefits to his family in an implicit exchange for Mr. Do's re-
8  allocation of County funds to Viet America Society; and Conspiracy Two, the
9  conspiracy between Mr. Pham and other individuals to divert and steal the
10 allocated funds in the manner described in the factual basis before this Court.
11      In Conspiracy One, Mr. Do had direct knowledge and intent to act corruptly,
12 as he has admitted to this Court. It is this limited knowledge and intent that
13 underlies the positions of a restitution range of both Government and Mr. Do's
14 counsel. Conspiracy Two, however, was committed without Mr. Do's knowledge
15 and intention, and does not support a claim for greater restitution, as proposed by
16 both the Government and Mr. Do's counsel. While both sides recognize that Mr.
17 Do did not do the reasonable oversight expected of a public official, this does not
18 support an order greater than that which Mr. Do received in bribes. The factual
19 basis of the Plea Agreement was specifically crafted by the Government to be
20 consistent with the parties' understanding of Andrew Do's lack of knowledge of
21 the alleged bad acts of Peter Pham and VAS (beyond the payments to Do's
22 daughters). Moreover, while Andrew Do may have helped steer the contracts to
23 VAS and allowed his daughters to receive benefits in appreciation for those
24 contracts, it was the County of Orange and County Counsel who was tasked with
25 supervising these contracts and had the access to audit their activities. In hindsight,
26 Andrew Do should have used more diligence in checking with the people who
27 were supposed to be overseeing these contracts before he went on YouTube to
28 endorse Peter Pham's work–but it is clear, as both parties tacitly confirm that there

is no evidence that Andrew Do had a role in Conspiracy Two. Mr. Do is guilty of the conspiracy to which he pled, and we believe that the restitution limits proposed by both parties should be ordered, or apportioned, as later discussed, with this in mind.

In ordering appropriate restitution in this case, we submit that were the Court to order restitution in line with Conspiracy One, as proposed by the Government and Mr. Doe's counsel, in which Mr. Do acted with knowledge and intent, restitution should be set within the range agreed to by the signatories to the Plea Agreement. In the event that the Court deems it appropriate to consider the facts outside of Mr. Do's knowledge, as per Conspiracy Two, or consider other facts within the Plea Agreement, we believe that apportionment pursuant to 18 U.S.C. Section 3664(h) is appropriate for the reasons set forth below–and Andrew Do's portion should be limited to paying back what he or his daughter's received.

In the Court's examination of the Plea Agreement, we ask the Court to note that the signed Plea Agreement was supplemented by a letter signed by Orange County District Attorney/Public Administrator Todd Spitzer ("Letter Agreement"); the signed Letter Agreement expressly "fully incorporates all terms and conditions set forth in the plea agreement with the USAO, *including all restitution terms*." Furthermore, the Letter Agreement was signed by Mr. Spitzer after having "jointly investigated and prosecuted this matter," and it expressed his agreement that the "interests of justice will be served by the plea agreement with the USAO."

We submit that the victim County of Orange became a constructive party to the Letter Agreement through the District Attorney/Public Administrator of the County, and thus that the victim confirmed that the interests of justice are served by the Plea Agreement and its restitution clause. As part of the prosecution team, we submit that the District Attorney and the County of Orange has committed itself to the range of restitution limits submitted by the Government and agreed to by the defense.

1  The Plea Agreement left it open that the range of $550,000 to $730,500
2  "could change based on facts that come to the attention of the parties prior to
3  sentencing." (*See* Plea Agreement at 9:28-10:2) At present, we understand that the
4  Government has discovered receipts that bring the amount to $868,612. We discuss
5  this below but believe that this is the upper limit of a just restitution order, subject
6  to the further appropriate reductions noted below. In light of the foregoing, and for
7  all of the following reasons, we submit that the Court is best to honor the positions
8  of the Government team (which includes the County of Orange representative
9  district attorney), and Mr. Do's counsel.

10 **II.  CONSPIRACY ONE IS THE APPROPRIATE FOUNDATION FOR**
11      **THE COURT'S CONSIDERATION, AND THUS THE PARTIES'**
12      **AGREED UPON RESTITUTION AT (OR BELOW) $868,612 AS**
13      **DISCUSSED HEREIN IS THE JUST RESULT IN THIS MATTER**
14      **A.  The Proper Amount of Restitution Should Be $868,612 or Below**
15          **Based on the Actual Offense to Which Mr. Do has Pled Guilty,**
16          **and Should Not Be Based on Other Related Offenses of Which He**
17          **has Not Been Convicted**

18  Defendant Andrew Do has entered a guilty plea to conspiracy to commit
19  bribery; according to the Plea Agreement and the Information, the object of the
20  conspiracy was for him to accept financial benefits in exchange for voting to award
21  contracts to Viet America Society (VAS) and received bribes totaling more than
22  $550,000 but less than $868,612. There is no denying that Mr. Do's conduct in
23  accepting bribes was shameful and a betrayal of his constituents. As reprehensible
24  as his conduct was, there is no evidence he knew about the broader scheme.
25  Accordingly, Mr. Do now stands convicted of conspiracy to commit bribery, not to
26  the broader conspiracy to commit fraud and essentially steal approximately $10
27  million by failing to provide contracted-for services–and has admitted receiving
28  between $550,000 and $730,500 (subject to an increase if additional receipts are

1   found) in bribes, knowing that "some of the funds VAS received from the County
2   were being used to pay" those bribes. Since none of the bribes actually went to Mr.
3   Do (but to his daughters), he did not know the exact amount.
4       A court may award restitution under the Mandatory Victims Restitution Act
5   (MVRA) only for loss that flows directly from "'the specific conduct that is the
6   basis of the offense of conviction.'" *United States v. Gamma Tech Indus., Inc.*, 265
7   F.3d 917, 927 (9th Cir.2001) (quoting *Hughey v. United States*, 495 U.S. 411, 413,
8   110 S.Ct. 1979, 109 L.Ed.2d 408 (1990)); see also *United States v. Baker*, 25 F.3d
9   1452, 1457 (9th Cir.1994) (noting that "a district court may not order restitution for
10  any loss beyond that caused by the offense of which the defendant was
11  convicted"). Thus, a court is authorized to order restitution "for the offense of
12  conviction and not for other related offenses of which the defendant was not
13  convicted." *United States v. Batson*, 608 F.3d 630, 636 (9th Cir.2010).
14      This, we submit, is the law underlying the proposals of both the Government
15  team and Mr. Do's counsel to this Court.
16      Although the MVRA grants district courts "a degree of flexibility in
17  accounting for a victim's complete loses," the court may "utilize only evidence that
18  possesses 'sufficient indicia of reliability to support its probable accuracy.'" *United*
19  *States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008) (quoting *United States v.*
20  *Garcia-Sanchez*, 189 F.3d 1143, 1148-49 (9th Cir. 1999)). Moreover, while "the
21  MVRA does not require courts to calculate restitution with exact precision, some
22  precision is required − '[s]peculation and rough justice are not permitted.'" *United*
23  *States v. Kilpatrick*, 798 F.3d 365, 388 (6th Cir. 2015) (quoting *United States v.*
24  *Ferdman*, 779 F.3d 1129, 1133 (10th Cir. 2015)). "The government has the burden
25  of proving the amount of the loss by a preponderance of the evidence." *United*
26  *States v. Anderson*, 741 F.3d 938, 951 (9th Cir. 2013).
27      Under the law, a court is authorized to order restitution "for the offense of
28  conviction and not for other related offenses of which the defendant was not

1 convicted." In light of this, the Board's allegation that the loss is actually in the
2 realm of $10,000,000 must be rejected.

3 Conversations with the Government have led us to anticipate that both
4 Government and Mr. Do's counsel are, consistent with the Plea Agreement,
5 aligned in proposing a limit in restitution to that which was received by Mr. Do or
6 his daughters.

7 Finally, we ask the Court to consider that the investigating agencies on
8 behalf of the federal government, and the investigating agencies utilized by the
9 Orange County District Attorney, all led to the joint Plea Agreement language
10 cited above repeatedly. We ask this Court, which has not conducted an
11 investigation independent of those parties, to rely on the good faith conclusions
12 proposed by both the Government and Mr. Do's counsel and as set forth in the Plea
13 Agreement including the attached signatories of the County's representative.

**B.  While Mr. Do has Entered a Guilty Plea to Conspiracy to Commit Bribery, There is No Evidence or Allegation He Knew that Co-Conspirators were Allegedly Stealing Millions by Failing to Provide Contracted-For Services**

18 The Plea Agreement includes no allegation or evidence that Mr. Do had
19 actual knowledge that co-conspirators were misappropriating funds in an amount
20 massively in excess of the bribes paid to Mr. Do and his family, were failing to
21 perform contracted-for services, and were stealing millions for their own benefit.
22 Indeed, the Plea Agreement at most characterizes him as having recklessly
23 disregarded whether the funds were being properly used.

24 Similarly, the Information against Mr. Do (attached as Exhibit 2 to the Plea
25 Agreement) alleges that the object of the conspiracy to which Mr. Do has pled
26 guilty was for him to accept financial benefits in exchange for voting to award
27 County contracts to VAS. The overt acts in the Information all consist of
28 allegations either that Mr. Do voted in favor of agenda items authorizing allocation

of funds or that he directly or indirectly received financial benefits. No overt act, or any other portion of the Information, alleges that Mr. Do knew about the broader scheme.

Likewise, the Indictment in Case No. 8:25-CR-00100-JVS (*United States v. Peter Anh Pham and Thanh Huong Nguyen*) contains no allegation or evidence that Mr. Do knew Mr. Pham and others failed to perform the contracted-for services and were stealing millions. The only overt acts in the Indictment for which Andrew Do is responsible are related to the house payment and steering the contracts to Peter Pham. There are many overt acts (over 130) related to checks from and between Mr. Pham, VAS, and other entities having nothing to do with Mr. Do. None alleges that Mr. Do knew about a broader scheme.

### III. IF THE COURT CHOOSES TO REJECT THE PROPOSALS OF BOTH THE GOVERNMENT AND MR. DO'S COUNSEL, AND DETERMINE RESTITUTION BASED ON CONSPIRACY TWO, ANDREW DO'S LEVEL OF CONTRIBUTION AND ECONOMIC CIRCUMSTANCES SUPPORT APPORTIONMENT WITHIN THE RANGE DESCRIBED BY THE PLEA AGREEMENT

#### A. The Court Has Discretion to Order Apportionment of Restitution Pursuant to 18 U.S.C. Section 3664(H)

18 U.S.C. Section 3664(h) provides: "If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution *or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant*." (Emphasis added.)

**B.  Andrew Do's Level of Contribution is Mitigated by an Absence of Awareness of Any Lack of Meal Deliveries and Certainly Any Awareness of Alleged Theft by Others in the Conspiracy**

In the Plea Agreement as supplemented by the Letter Agreement, the defense, government and district attorney as a County representative, in effect confirm that there is no evidence that Andrew Do had actual knowledge that misuse of allocated funds was occurring in an amount in excess of the bribes paid to his daughters. Nor is there any evidence that Mr. Do was aware of thefts by other conspirators.

We recognize the Court's view of Mr. Do's obligations as a public official. Although as an individual Orange County Supervisor, it was not necessarily his responsibility to provide this oversight, we recognize in hindsight that he should have taken steps to monitor the actual use of the funds before he made statements based on what now appears to be negligent or reckless assumptions. However, we believe that the lack of awareness of potential greater losses by others in the conspiracy is a substantial factor in a U.S.C. Section 3664(h) analysis. We ask the Court to consider and rely upon the factual statement in the Plea Agreement, to wit:

> Defendant knew that some of the funds VAS received from the County was being used to pay bribes instead of to provide meals to the elderly or infirm. Defendant nonetheless intentionally voted on the contracts in reckless disregard as to whether the funds were being properly used.

(Plea Agreement at 18:3-7)

In short, there is no evidence that Andrew Do's failure as a public official in his actions involving the bribery payments to his daughters included his awareness or intention that the victim incurred or would incur losses beyond the diversion of funds to his family. In other words, there is simply no evidence that Andrew Do

was aware or intended that others chose to violate their county contracts and steal millions from the victim.

### C. Andrew Do Should Not Be Held Responsible for Losses He Did Not Anticipate or Even Know About

A fair evaluation of the 3664(h) factors would apportion losses based on the bad intentions and bad conduct of those who caused the losses. Had the other conspirators performed their duties under the contract, then no losses would have occurred, and Andrew Do would be tarred with the receipt of bribes but not with the losses referenced by the victim in this matter.

Yes, Mr. Do received, via payments to his daughters, a large sum in bribes. That sum was limited to the range of $550,000 to $730,500 with additions for other monies received, noted in the Plea Agreement, and any other sums the government might later discover he or his daughters received. Ordering Mr. Do to pay restitution for the vast sums listed in the materials provided the Court that Mr. Do could not anticipate is simply unfair. He is guilty of the crime of conspiracy to commit bribery, and the Court has the power to order any figure supported by the facts and evidence, but we ask that Court to use that power in accord with the apportionment precepts of section 3664(h).

### D. Mr. Do's Economic Circumstances Warrant an Order Within the $550,000 to $730,000+ Range

The Plea Agreement and the Presentence Report (PSR) set forth the facts about what happened, Mr. Do's participation and his daughter's receipt of the bribes. It also provides insight into Mr. Do's financial abilities and current situation. Mr. Do is capable of paying the restitution contemplated when all signed the Plea Agreement and Letter Agreement; he is incapable of paying now or in the future, the sums sought by the victim County through its impact statement.

### E. Equitable Circumstances Support Apportioning Restitution, Resulting in an Amount Within the $550,000 to $730,500+ Range

Before reviewing the equitable circumstances below, we ask the Court to enforce the precept noted in the Court's Sentencing Memorandum, that one "cannot change the admitted facts after the fact." (Sentencing Memorandum at page 4 of 8). We believe that this applies equally to both parties, and to all signatories of the Plea Agreement. A just system has all parties investigating and negotiating in good faith. Abiding by the principles of agreement to the facts in the Plea Agreement is a major bedrock component of a just system. We recognize that this Court is not bound by the Plea Agreement, but the parties are. And we consider the parties to include all signatories who confirmed the validity and terms of the Plea Agreement either on the document itself or on the letters attached to the Plea Agreement. The specific statements within the Plea Agreement at paragraph 9 concerning the range of restitution for loss, and in public comments (*see* Exhibit A, Press Release), confirm the intentions of the parties to the range identified in the Plea Agreement.

### 1. Andrew Do Relied on the Plea Agreement Verification of the Restitution Amount to be Expected in the Future

Andrew Do agreed to plead guilty and accept a lengthy prison sentence based on the terms of the Plea Agreement. We submit that the specific language in the Plea Agreement regarding the range of appropriate restitution should be the controlling language for consideration. In addition, forfeiture of the house was also activated by the Plea Agreement, and sentence. That house has now been forfeited.

### 2. The Court Should Agree With the Government And Not Accept the Victim's Later Claim Via an Impact Statement By a Victim Who had Agreed to a Lesser Figure, Through the Representation of the District Attorney

As set forth above, by the Letter Agreement, the victim County agreed,

through Orange County District Attorney Todd Spitzer, to the incorporated and confirmed terms of the Plea Agreement, including the range of restitution. Since it is bound by those terms, it should not be permitted by its victim impact statement to seek greater restitution when that impact statement is based on purported facts known to the County and its representative, the Orange County District Attorney's Office, at the time the Plea Agreement and Letter Agreement adopting the same were signed. Again, the District Attorney and the County agreed in adopting the terms of the Plea Agreement, "The parties currently believe that the applicable amount of restitution is more than $550,000 and less than approximately $730,500 but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing." (Plea Agreement 9:26-10:2)

The victim impact statement does not establish that the purported facts stated therein came to the attention of the County and/or District Attorney after execution of the Plea Agreement and Letter Agreement and otherwise change the amount of the bribes the County knew Mr. Do received when Mr. Do, the government and the County vis-à-vis Todd Spitzer signed, respectively, the Plea Agreement and Letter Agreement. Instead, the victim impact statement is entirely based on purported facts known to the government, County and District Attorney when the Plea Agreement and Letter Agreement were signed. Further the victim impact statement was presented by the government after the government had signed an agreement not to contest the facts presented in the Plea Agreement. As the Government we expect will state, the victim impact statement should therefore be rejected as contrary to the express terms of the Plea Agreement and Letter Agreement. In addition, the Plea Agreement reflects the results of a thorough investigation by both the County and United States representatives and their respective law enforcement agencies.

IV. **IF THE COURT ACCEPTS BOTH GOVERNMENT AND MR. DO's COUNSEL UNIFIED POSITION, THE RESTITUTION WOULD BE NO HIGHER THAN $868,612 AND SUBJECT TO ONE FURTHER REDUCTION AS SHOWN BELOW.**

In determining the appropriate level up to $868,612, we ask the Court to consider reductions from that figure as follows:

This is the chart of payments to Mr. Do's family.

| No. | Bribe | Date | Amount |
|---|---|---|---|
| 1 | Check from Behavioral Health Solutions to Rhiannon Do | 3/11/22 | $18,000 |
| 2 | Check from VAS to Rhiannon Do | 4/2/22 | $18,000 |
| 3 | Check from Co-Conspirator 1 to Rhiannon Do | 5/22/23 | $25,000 |
| 4 | Check from J.T. to Rhiannon Do for the house | 8/4/22 | $40,000 |
| 5 | Check from H.D. Construction to Rhiannon Do | 1/5/23 | $5,000 |
| 6 | Check from VAS to Rhiannon Do | 2/8/23 | $5,000 |
| 7 | "Gift of Cash" from AFI to Rhiannon Do (house down payment) | 7/18/23 | $350,000 |
| 8 | "Earnest Money" from AFI to Rhiannon Do | 7/7/23 | $31,050 |
| 9 | Check from Co-Conspirator 1 to Daughter 2 | 9/26/22 | $25,000 |
| 10 | Check from D-Air to Daughter 2 | 10/18/22 | $25,000 |
| 11 | Check from D-Air to Daughter 2 | 11/30/22 | $25,000 |

| No. | Bribe | Date | Amount |
|---|---|---|---|
| 12 | Check from D-Air to Daughter 2 | 2/21/23 | $25,000 |
| 13 | "Salary Payments" from Perfume River Restaurant/AFI to Rhiannon Do | 9/7/2021 – 2/8/24 | $224,000 |
| 14 | "Salary Payments" from VAS to Rhiannon Do | 3/1/23 – 9/30/23 | $27,237 |
| 15 | "Salary Payments" from Warner Wellness to Rhiannon Do | 9/1/23 – 3/31/24 | $25,325 |
| | **Total** | | **$868,612** |

The amount paid to Rhiannon for salary and compensation for her work was $378,612 (taking out payments to the other daughter and the house payments). Part of the salary was paid, as the Factual Basis to the Plea Agreement states, "in appreciation of the contracts awarded by the county, (Plea Agreement, at 16:11-12), but part was also salary earned by Rhiannon.

Rhiannon did significant work for Warner Wellness Center, and it would, in fact, violate California law for her to work for approximately 17 months with no compensation. Assuming she has earned at least the fast-food minimum wage of $20 hours, she had to be paid for 17 months (March 2023-August 2024). This would mean that for 82.4 weeks at approximately $800 a week, she earned no less that $65,920, bringing the final restitution number to $802,692.00.

### A. Rhiannon's Work with Warner Wellness

Rhiannon Do did substantive work for WWC, including drafting HR and company manuals, interviewing and hiring all staff including vetting an MD, multiple clinicians and contractors; she researched regulations regarding hiring clinicians from Vietnam; worked with food scientists to prepare senior-appropriate menus and conducted lab testing on nutritional values; drafted a proposal for the

Elderly Nutrition Program; conducted all staff training and served as the face and main contact for WWC.[1] According to the factual basis in the Plea Agreement, she was paid a little over half of what she was offered at Jones Day, where she was given an offer to start at an annualized salary of $225,000. (Exhibit F to the Krieger Decl.) Ms. Do was very concerned about providing health services to Asian Americans–and even wrote her thesis in law school specifically on health disparities among Asian Americans entitled "Improving Immigrant Pathways to Address Preventive Health Disparities Among Asian Americans." Ms. Do took her position with WWC seriously and she provided value for WWC. While some of Ms. Do's salary may be seen as being in appreciation of Andrew Do's advocating for getting VAS the County contracts, Rhiannon Do's salary was earned—and by California law has to be credited to her for her work. We are assuming, conservatively, she would be paid at a non-profit at least minimum wage. This is why we urge the Court to order $802,692 in restitution. Andrew Do should not have to pay back money for salary that his daughter properly earned—as that compensation properly belongs to the employee, Rhiannon Do.

---

[1] As stated in our original Sentencing Position Papers, Ms. Do. put together an Outreach and Education Plan. (Exhibit A to the Declaration of Eliot Krieger, filed with Defendant's Sentencing Position Papers, Clerks Record at Doc No. 35, hereafter "Krieger Decl.") She delivered an app for the WWC. (Exhibit B to the Krieger Decl.) She created a program to train people what WWC was about and created a center with the vision "to achieve good mental health through education, stigma reduction and removal of all barriers to services." (Exhibit C to the Krieger Decl., PowerPoint describing the vision of the program). Her vision involved mapping out all of the people working at the center. (Exhibit D to the Krieger Decl.) Ms. Do mapped out everyone's responsibilities at WWC–from the clinicians to the case managers, the community outreach specialists and even the responsibilities of the receptionist. *Id.* She set up a warm line (Exhibit K to the Krieger Decl.) and set up a strategic plan for WWC. (Exhibit E to the Krieger Decl., Strategic plan for WWC dated August 2022).

## V. THE COURT MAY ALSO ORDER PAYMENTS COMMENSURATE WITH MR. DO'S ECONOMIC CIRCUMSTANCES

18 U.S.C. 3664(f) permits this Court to order Andrew Do to make payments commensurate with his ability to pay:

> (3)(A) A restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments.
> (B) A restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments.

This Court has already indicated that Andrew Do has a limited ability to pay restitution, as Mr. Do's complete summary of his assets appear in the PSR. We believe that once the Court finds a figure that fairly deals with the statutory requirements, via an appropriate assessment of Mr. Do's ability to pay should be made. In that regard, and considering that this Court has sentenced Mr. Do to five years in prison, we submit that a rate of payment commensurate with his ability be ordered. This rate is consistent with the parties' agreement with the range as between $550,000 and $730,500 (which also provided for an additional increase for other monies received by Mr. Do or daughters).

## VI. CONCLUSION

We urge the Court to accept the unified positions of both the Government team and Mr. Do's counsel and order restitution in an amount no higher than $868,612 and to further reduce that figure to $802,692 to account for a minimum wage salary for the work done by Rhiannon. Andrew Do has agreed to the seizure of the property that VAS assisted his daughter in buying (which has already

1 | occurred, based on the Plea Agreement), the Government has recommended, and
2 | Defendant concurs that the proceeds from the sale of the property should off-set
3 | any amount of restitution ordered.

Respectfully submitted,

Dated: July 21, 2025

_____/s/_____
PAUL S. MEYER
ELIOT KRIEGER
Attorneys for Defendant,
Andrew Do